UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| A.C., a minor child, by his next friend, mother and legal guardian, M.C., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:21-cv-2965 ) |
| METROPOLITAN SCHOOL DISTRICT OF MARTINSVILLE; PRINCIPAL, JOHN R. WOODEN MIDDLE SCHOOL, in his official capacity, | ) ) ) ) ) ) |
| Defendants. | ) |

**Complaint for Declaratory and Injunctive Relief and Damages**

**Introduction**

1.  A.C. is a transgender boy who attends John R. Wooden Middle School, one of the schools within the Metropolitan School District of Martinsville. He was diagnosed with gender dysphoria and is receiving treatment aimed at alleviating the distress associated with the incongruence between his male gender identity and his birth-assigned sex. He has filed a court action, which is currently pending in state court, to have the gender marker changed to male and his name formally changed on his birth certificate. He has requested the ability to use the boys' restrooms at his school as well as asking to participate on the boys' soccer team as he is male, despite his birth certificate reflecting that his birth-assigned gender was female. Employees of the Metropolitan School District

of Martinsville ("School District") have denied this request. He has also requested that he be addressed in a manner that reflects that he is a boy by referring to him using male pronouns. A number of staff persons refuse to do so, and the School District has not required it of the staff. Defendants' failure to recognize plaintiff as male, to allow him to use boys' restrooms and facilities at the school, to require that he be addressed by the pronouns consistent with his male gender, and to allow him to participate on the boys' soccer team, violates both Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681(a) and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. He is entitled to declaratory and injunctive relief, as well as his damages.

**Jurisdiction, venue, and cause of action**

2.  This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4.  Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and by 28 U.S.C. §§ 2201, 2202.

5.  Plaintiff brings this action pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of right secured by the United States Constitution and as a private cause of action directly pursuant to Title IX as authorized by *Cannon v. University of Chicago*, 441 U.S. 677, 717 (1979).

**Parties**

6.      A.C. is a minor child who resides in Martinsville, Indiana. He brings this action by his mother as his next friend and legal guardian.

7.      The Metropolitan School District of Martinsville is a public-school corporation providing educational services in Martinsville, Indiana.

8.      The Principal of the John R. Wooden Middle School is the duly appointed principal of the school and is sued in his official capacity.

**Factual allegations**

9.      A.C. is a 7th grader at the John R. Wooden Middle School, one of the schools within the Metropolitan School District of Martinsville ("School District").

10.     Although the gender assigned to A.C. at birth was female, he has known himself to be a boy for several years.

11.     When A.C. was in 5th grade he indicated to his family that he was not female and asked that he be addressed by a male first name and with male pronouns or "they."

12.     Since his time in elementary school, A.C. has been treated as male by his family.

13.     In 5th grade he was in school in Anderson, and he wore male clothes and cut his hair in a masculine manner.

14.     School personnel referred to him by his male first name and referred to him by male pronouns.

15.     When A.C. was in 5th grade he moved with his family to Martinsville where he

was enrolled in one of the schools within the School District.

16. The staff at this school did not honor M.C.'s request that A.C. be referred to with male pronounces, instead referring to him using female pronouns.

17. However, some students, in addition to referring to him by his male first name, also referred to him using male pronouns.

18. By this point, A.C. was acutely uncomfortable using the girls' restrooms as he knew he was not female and did not present as female.

19. He knows himself, and continues to know himself, as male.

20. A.C. asked if he could use the boys' restroom at the school and was told he had to use either the girls' restrooms or the single-person restroom in the school's health clinic.

21. He used the restroom at the health clinic and continued to do so for the remainder of 5th and 6th grades. He did not use the girls' restrooms.

22. Using the health clinic restroom was disquieting to him as it made him feel different than the other students and increased the anxiety he was feeling between his sex assigned at birth and his gender.

23. For the 2021-2022 school year, A.C. entered 7th grade in the John R. Wooden Middle School, one of the schools in the School District that contains 7th and 8th grades.

24. He continues to be a student in the John R. Wooden Middle School.

25. He is male and therefore did not use the girls' restrooms in the school.

26. He believed that the only option that he had was to use the single-person restroom

in the health clinic.

27. Therefore, at the beginning of the school year, he used the single-person restroom in the health clinic.

28. Using the health clinic restroom was problematic.

29. The health clinic in the school is far away from his classes. When he has tried to use the restroom during passing periods between classes it is so far away that he is frequently late for his next class.

30. At times he has asked to use the restroom during class periods, and he has been refused.

31. Moreover, as he has gotten older and more secure with asserting his identity as a boy, he has become increasingly disturbed about having to use the clinic restroom and not being able to use the boys' restrooms like all the other boys in the school. He feels that he is being singled out and that he is not accepted for who he is.

32. This has caused him anxiety and unhappiness.

33. These feeling are increased by the fact that although he is referred to by his male first name by many of the regular teachers a number of them continue to refer to him by female, not male, pronouns.

34. Substitute teachers routinely refer to him with female pronouns.

35. In September of this year, he became a patient at the Gender Health Program at Riley at IU Health in Indianapolis where he is receiving care and treatment for the

diagnosed condition of gender dysphoria.

36. As part of his treatment for gender dysphoria, A.C. has been prescribed medication to prevent him from having periods. When medically appropriate, A.C. will start masculinizing hormones.

37. M.C., on A.C.'s behalf, has petitioned a Morgan County state court for a legal name and gender marker change so that A.C.'s birth certificate can be amended to reflect his male gender and the name he uses that reflects his gender. That matter is currently pending.

38. Because of her concerns over the school's refusal to allow her son to live his school life as a boy, M.C. consulted with Gender Nexus, an organization for transgender and nonbinary persons, a representative of whom emailed the school's principal in the fall of this year, requesting a meeting.

39. On November 3, 2021, A.C., his mother, and representatives of Gender Nexus met with school personnel. The principal was not there, instead a school counselor was present.

40. At this meeting A.C., his mother, and the advocates indicated that A.C. had the right to use the restroom that aligned with his gender identity. A.C. also asked to participate in boys' soccer in the fall of 2022.

41. The counselor indicated that he would have to check with the "higher ups" and would get back to A.C. and his mother.

42. Within an hour and a half, the counselor left a voice mail for M.C. indicating that the information he had received from the principal of the John R. Wooden Middle School was that A.C. would have to continue using the health clinic restroom, although he would be given extended time to do so. The counselor also stated that the school would allow A.C. to be educated at home with on-line schooling. Finally, the counselor stated that the school needed to follow the IHSAA (Indiana High School Athletic Association) rules concerning athletic participation. Nothing was said about the school requiring staff to refer to A.C. using male pronouns. A.C. and his mother understood that to mean that no such requirement would be issued by the school.

43. Following the November 3, 2021, meeting, and despite the counselor's voice mail, A.C. began to use the boys' restrooms at the school.

44. The urinals in the restrooms have partitions between them and the toilet stalls all have doors.

45. When using the boys' restrooms he received no adverse reactions from other students, and he found this acceptance comforting.

46. However, on November 22, 2021, a teacher saw him using the boys' restroom and the teacher sent A.C. to the office where he met with administrative staff who admonished A.C. and instructed him that he could not use the boys' restroom. They threatened him with punishment if he used the boys' restroom.

47. During his time in the office, A.C. called his stepfather, who spoke to the

administrators. During the conversation an administrator repeatedly misgendered A.C., referring to him as a girl.

48. The school's refusal to accept A.C. as a boy and being disciplined for using the male restroom was extremely upsetting to A.C. and he stayed home from school the next day.

49. On November 29, 2021, the principal of John R. Wooden Middle School called A.C. into his office and instructed him that he was not to use the boys' restroom and that other parents and the community had a voice in what restrooms A.C. used.

50. A.C. called his mother on his phone while in the office and the principal told W.C. that A.C. would have to use the girls' restroom or the restroom in the health clinic, that the community had taken a vote on it, and that she should express her opinions at the School Board.

51. Certain staff persons have continued to refuse to refer to A.C. with male pronouns.

52. Although the IHSAA has a formal policy governing athletic participation by transgender students, it only applies to athletes in the 9th-12th grades and makes no mention of younger students. *See* Purpose of the IHSAA, https://www.ihsaa.org/About-IHSAA/Current-Information/Purpose (last visited Nov. 26, 2021).

53. A.C. is being caused psychological stress and injury by the actions of the defendants in that they serve to reemphasize the disconnect between his sex assigned at birth and gender identity and cause him continuing depression, anxiety, mental distress,

and other injuries.

54. A.C. is being caused irreparable harm for which there is no adequate remedy at law.

55. The Metropolitan School District of Martinsville is a recipient of federal funding and is an entity covered by Title IX.

56. At all times defendants have acted and have failed to act under color of state law.

57. The actions and inactions of defendants represent intentional discrimination and have damaged plaintiff.

**Legal claims**

58. The failure to allow A.C. to use male restrooms at John R. Wooden Middle School and to require that he be referred to as a male, using pronouns consistent with his gender identity, and allowing him to participate in soccer with the boys' team, represents unlawful discrimination because of sex in violation of Title IX, 20 U.S.C. § 1681(a), for which the Metropolitan School District of Martinsville is liable.

59. The failure to allow A.C. to use male restrooms at John R. Wooden Middle School and to require that he be referred to as a male, using pronouns consistent with his gender identity, and allowing him to participate in soccer with the boys' team, violates the Equal Protection Clause of the Fourteenth Amendment, for which the Principal of the John R. Wooden School, in his official capacity, is liable.

    WHEREFORE, A.C. requests that this Court:

a.  Accept jurisdiction of this case and set it for prompt hearing.

b.  Declare that defendants have violated the plaintiff's rights for the reasons noted above.

c.  Enter a preliminary injunction requiring defendants to allow A.C. to use boys' restrooms and further requiring that A.C. be referred to by school personnel as male, using the pronouns associated with his gender identity.

d.  Enter a permanent injunction, requiring defendants to allow treat A.C. a boy in all respects, allowing him to use male restrooms and other facilities, and further requiring that A.C. be referred to by school personnel as male, using the pronouns associated with his gender identity and allowing A.C. to participate on the boys' soccer team in the fall of 2022.

e.  Award plaintiff his damages.

f.  Award plaintiff his reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

g.  Award all other proper relief.

Kenneth J. Falk
Stevie J. Pactor
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
spactor@aclu-in.org


Megan Stuart
Indiana Legal Services
214 S. College Ave., 2nd Floor
Bloomington, IN 47404
812/961-6902
Megan.stuart@ilsi.net


Kathleen Bensberg
Indiana Legal Services, Inc.
1200 Madison Ave.
Indianapolis, IN 46225
317/631-9410
fax: 317/269-7219
Kathleen.bensberg@ilsi.net

Attorneys for Plaintiff