UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| A. C. a minor child, by his next friend, mother and legal guardian, M.C., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>METROPOLITAN SCHOOL DISTRICT OF MARTINSVILLE, )<br>)<br>)<br>Defendant. ) | Case No. 1:21-cv-02965-TWP-MJD |

### ORDER ON MOTIONS TO EXCLUDE EXPERT TESTIMONY

This matter is before the Court on Plaintiff A.C., a minor child, by his next friend, mother, and legal guardian, M.C.'s ("A.C.") Motion to Exclude Expert Testimony of Dr. Kristopher Kaliebe ("Dr. Kaliebe") (Filing No. 158) and Defendant Metropolitan School District of Martinsville's ("School District") Motion to Exclude Plaintiff's Expert's Testimony (Filing No. 160). For the following reasons, A.C.'s Motion is **granted**, and the School District's Motion is **granted in part and denied in part**.

### I. BACKGROUND

The facts of this case are set forth in detail in the Court's Entry of Motion for Partial Summary Judgment (Filing No. 175). The Court provides an abbreviated summary of the facts below.

A.C. is a transgender boy who attends Martinsville High School. Prior to attending Martinsville High School, he attended John R. Wooden Middle School ("Wooden Middle"). While attending Wooden Middle, A.C. sought to use the boys' restroom, the restroom he felt most comfortable using, but was denied access by the School District. The School District offered him the use of the school's single-sex restroom instead.

On December 3, 2021, A.C. filed the instant lawsuit against the School District seeking declaratory and injunctive relief that would assure his access to gender-affirming restrooms. On April 29, 2022, the Court granted A.C.'s motion for preliminary injunction ([Filing No. 50](#)). The injunction prohibits the School District from "stopping, preventing, or in any way interfering with A.C. freely using any boys' restroom located on or within the campus of [Wooden Middle] or any other school within the Metropolitan School District of Martinsville." ([Filing No. 87](#)).

On July 10, 2024, A.C. filed a motion for partial summary judgment as to liability only on his Title IX and Equal Protection claims ([Filing No. 123](#)). On January 7, 2025, the Court granted A.C.'s motion for partial summary judgment ([Filing No. 175](#)). The School District is permanently enjoined from interfering with A.C.'s free use of any boys' restroom within the Metropolitan School District Martinsville (*see* [Filing No. 177](#)).

The School District filed an interlocutory appeal as to the Court's Order on Motion for Summary Judgment ([Filing No. 175](#)) and the Court's Permanent Injunction ([Filing No. 177](#)). The parties then filed their Joint Motion to Stay the jury trial ([Filing No. 188](#)) which the Court granted ([Filing No. 189](#)).

## II.     LEGAL STANDARD

Federal Rule of Evidence 702 and the United States Supreme Court's opinion in *Daubert v. Merrell Dow Pharms., Inc.*, governs the admissibility of expert testimony. 509 U.S. 579 (1993). Rule 702 charges trial judges with the responsibility of acting as "gatekeeper[s] with respect to testimony proffered under Rule 702 to ensure that the testimony is sufficiently reliable to qualify for admission." *Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004). The Rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Under the *Daubert* framework, courts use a three-part analysis. *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). "The rubric for evaluating the admissibility of expert evidence considers whether the expert was qualified, whether his methodology was scientifically reliable, and whether the testimony would have assisted the trier of fact in understanding the evidence or in determining the fact in issue." *Hartman v. EBSCO Indus., Inc.*, 758 F.3d 810, 817 (7th Cir. 2014). The "proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard" by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). The Seventh Circuit has made clear that "[even] a supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are…relevant under the test set forth by the Supreme Court in *Daubert*." *Id.* (quoting *Clark v. Takata Corp.*, 192 F.3d 750, 759 at n. 5 (7th Cir. 1999)). Whether to admit expert testimony rests within the discretion of the district court. *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 809 (7th Cir. 2012).

### III.    DISCUSSION

The instant motions have been ripe for ruling for some time. Although this action remains before the appellate court on appeal, the district court may rule on ancillary matters which are not part of the merits of the appeal.

### A.    A.C.'s Motion to Exclude Testimony of Dr. Kaliebe

A.C. asks the Court to exclude Dr. Kaliebe's testimony at trial, because it fails to meet the requirements of Federal Rule of Evidence 702 and fails to meet the requirements established by *Daubert*. A.C. argues that Dr. Kaliebe is not qualified to render opinions concerning gender dysphoria and social transition, Dr. Kaliebe's opinions generally are not reliable, and Dr. Kaliebe's opinions are irrelevant in assessing the damages caused for the emotional distress and physical discomfort A.C. experienced (*see* Filing No. 159 at 10-21). A.C. further argues that Dr. Kaliebe has no knowledge of A.C. and very little information about the case limiting his ability to form an opinion based on sufficient facts or data. *Id.* at 18-19.

In its response, the School District outlines Dr. Kaliebe's relevant educational background, qualifications, training, and experience as a board-certified childhood and adolescent psychiatrist (Filing No. 164 at 8-13). The School District argues that Dr. Kaliebe's report adequately details the source of his opinions and contends that A.C.'s challenge to Dr. Kaliebe's experience and factual assumptions are topics for cross-examination, not a basis for disqualification. *Id.* at 11 n.3; *see also id.* at 18.

A.C. replies that the School District has failed to demonstrate that Dr. Kaliebe is qualified, that his methodology is reliable, or that his opinions are relevant (Filing No. 167 at 1). Specifically, A.C. narrows in on the fact Dr. Kaliebe has no clinical experience on the issue at hand in this case – the denial of a form of social transition, restroom usage, to a gender dysphoric youth. *Id.* at 5. A.C. further asserts that the School District concedes that if the merits of the permanent injunction are resolved on summary judgment, Dr. Kaliebe has nothing to offer at a damages-only trial. *Id.* at 9.

Dr. Kaliebe's qualifications and reliability of testimony aside, the School District fails to demonstrate how Dr. Kaliebe's testimony is relevant beyond addressing the elements of a

permanent injunction. The School District details how Dr. Kaliebe's testimony is relevant (1) to dispute whether their position regarding bathroom access is the cause of any irreparable injury to A.C.; (2) to the balancing harms analysis set forth in the permanent injunction consideration; and (3) to demonstrate that the public's interest would not be served by a permanent injunction (Filing No. 164 at 19-20). However, there is no argument as to how this testimony relates to damages.

Given the Court's granting of the permanent injunction, the merits of the permanent injunction request are no longer an issue for trial. Therefore, Dr. Kaliebe's proposed testimony is no longer relevant and A.C.'s Motion is **granted**.

B.      **The School District's Motion to Exclude Expert Testimony**

The School seeks to exclude the testimony of James D. Fortenberry ("Dr. Fortenberry"), who opines that A.C. would suffer adverse effects if he is denied continued use of the boys' restroom, reports the experiences of others with gender dysphoria, and offers statistics related to suicidality of individuals with gender dysphoria (*see* Filing No. 161 at 1-6). The School District argues the aforementioned testimony is irrelevant, hearsay, confusing to the jury, and unduly prejudicial. The School District also seeks to exclude Dr. Fortenberry's testimony as to the genetic or brain-scan studies suggesting that there is a biological component to gender identity because those are areas outside his alleged expertise. *Id.* at 6.

In his response, A.C. argues Dr. Fortenberry's testimony is relevant to demonstrate the type of harms – both physical and emotional – that A.C. was caused by the School District restricting his access to the boys' restroom (Filing No. 163 at 1-16). A.C. also contends that Dr. Fortenberry's testimony as to the danger of suicidality in transgender young persons is necessary to demonstrate how serious gender dysphoria is. *Id.* at 12-14. Lastly, A.C. argues that because Dr. Fortenberry has experience in assisting persons who are transgender and therefore constantly faces the question of

etiology of gender identity, his experience allows him to testify about the genetic and brain science studies he has reviewed. *Id.* at 14-16.

The School District reiterates many of the arguments raised in their initial brief in their reply brief (*see generally* Filing No. 168). Specifically, the School District argues that testimony as to any alleged adverse effects if the preliminary injunction is withdrawn is speculative and does not establish that there was any harm prior to the issuance of the preliminary injunction. *Id.* at 1-2. The School district also argues reports of other young people with gender dysphoria is hearsay because no foundation has been established indicating the statement was made for medical diagnoses. *Id.* at 2-4. Lastly, the School District contends testimony related to suicide and brain scans are irrelevant because A.C. is not suicidal and has not received a genetic or functional magnetic resonance brain scan. *Id.* at 4-6.

As an initial matter, the Court will address the School District's argument that if Dr. Kaliebe's testimony is excluded for the reasons argued by A.C., Dr. Fortenberry's testimony should be excluded for those same reasons (*see* Filing No. 161 at 7). As noted above, Dr. Kaliebe's testimony was excluded on the basis of relevance. The decision whether or not to exclude Dr. Fortenberry's testimony will be looked at individually and not in relation to Dr. Kaliebe's testimony.

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action. *See* Fed. R. Evid. 401. This often includes facts that merely fill in helpful background information for the jury, even if they are only tangentially related to the issues presented. *State Farm Mut. Auto. Ins. Co. v. Earl*, 33 N.E.3d 337, 341 (Ind. 2015).

6

A.C. convincingly argues that most of Dr. Fortenberry's testimony is necessary and relevant to demonstrate the types of harm – both physical and emotional – that transgender youth suffer. Dr. Fortenberry's opinion that "forced use of facilities that contravene [A.C.'s] gender experience and identity are reasonably expected to cause adverse effects on relationships with his school, his safety at school, and his mental health" speaks to the harm A.C. experienced when he was denied access to the boys' restroom prior to this Court's grant of a preliminary injunction (*see* Filing No. 123-2 at 8 ¶ 35). Similarly, testimony about how youth react to the denial of access to appropriate restrooms and suicidality rates in transgender youth provides relevant background to the harms affiliated with gender dysphoria. A.C. testified that he made comments to his mom about not wanting to live trapped in a female's body (*see* Filing No. 126-1 at 9). This testimony is directly related to suicidal ideations in transgender youth.

However, A.C. has not successfully demonstrated how Dr. Fortenberry's testimony that "gender expression/identity is not a 'choice'" or testimony about genetic or brain-scan studies is relevant information that can help a jury understand gender dysphoria as it relates to A.C. specifically. A.C. argues that testimony about brain scans is necessary to explain his opinion that being transgender is not a choice. But A.C. does not explain how transgender status being a choice, opposed to a biological making, makes the harm he faced by the School District's actions more or less probable. For this reason, Dr. Fortenberry is **precluded** from discussing whether or not gender identity is a choice and from discussing genetic or brain-scan studies.

In addition to arguing the opinions above are irrelevant, the School District argues reports of the experiences of other young people with gender dysphoria should be excluded because it is hearsay, confusing to the jury, and unduly prejudicial. Dr. Fortenberry may communicate what he observed and heard to establish the basis of his opinion. *See Tilstra v. BouMatic LLC*, 791 F.3d

749, 753 (7th Cir. 2015) (noting that an expert witness can rely on hearsay, provided that such reliance is accepted practice in his profession).

The School District's Motion is **granted in part and denied in part**. Dr. Fortenberry may testify about the harm caused to transgender youth who are denied the ability to socially transition, and the suicide rates of transgender youth. Dr. Fortenberry may not testify about whether transgender status is a choice or studies demonstrating there is a biological component to gender identity.

## IV. CONCLUSION

For the reasons stated above, A.C.'s Motion to Exclude Expert Testimony of Dr. Kaliebe (Filing No. 158) is **GRANTED** and the School District's Motion to Exclude A.C.'s Expert's Testimony (Filing No. 160) is **GRANTED in part and DENIED in part**.

SO ORDERED.

Date: 8/27/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Jonathan Lamont Mayes
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
jmayes@boselaw.com

Stevie J. Pactor
ACLU OF INDIANA
spactor@aclu-in.org

Megan Stuart
INDIANA LEGAL SERVICES, INC. (Bloomington)
megan.stuart@ilsi.net

Mark Wohlford
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
mwohlford@boselaw.com

Philip R. Zimmerly
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
pzimmerly@boselaw.com